| ADVERSARY PROCEEDING COVER SHEET | ADVERSARY PROCEEDING NUMBER (Court use only) |
|---|---|
| **PLAINTIFFS**<br>E. Perry Burrus, III and Lake Como, LLC | **DEFENDANTS**<br>Jennifer Bergmann |
| ATTORNEYS (Firm Name, Address and Telephone No.)<br>Ann U. Bell, District ID#10372<br>Drose Law Firm    (843) 767-8888<br>3955 Faber Place Dr., Ste. 103<br>Charleston, SC 29405-8565 | ATTORNEYS (If Known) |
| PARTY (Check one box only)   ☐ 1. U.S. Plaintiff    ☐ 2. U.S. Defendant    ■ 3. U.S. Not a Party | |

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Core Proceeding pursuant to 28 U.S.C. Sec. 157(b)(2)(I) regarding the dischargeability of debts.

### NATURE OF SUIT
(Check the one most appropriate box only)

- ☐ 454 To recover money or property
- ☐ 435 To determine validity, priority, or extent of a lien or other interest in property
- ☐ 458 To obtain approval for the sale of both the interest of the estate and of a co-owner in property
- ☐ 424 To object to or revoke a discharge 11 U.S.C. §727
- ☐ 455 To revoke an order of confirmation of a Chap. 11 or Chap. 13 Plan
- ■ 426 To determine the dischargeability of a debt 11 U.S.C. §523
- ☐ 434 To obtain an injunction or other equitable relief
- ☐ 457 To subordinate any allowed claim or interest
- ☐ 456 To obtain a declaratory judgment relating to any of foregoing causes of action
- ☐ 459 To determine a claim or cause of action removed to a bankruptcy court
- ☐ 498 Other (specify)

| ORIGIN OF PROCEEDINGS | ■ 1. Original Proceeding | ☐ 2. Removed Proceeding | ☐ 4. Transferred to another Bankruptcy Court | ☐ 5. Reinstated or reopened | ☐ Check if this is a class action under FRCP 23 |
|---|---|---|---|---|---|
| DEMAND | NEAREST THOUSAND<br>$ To Be Determined | | OTHER RELIEF SOUGHT<br>*DECLARATORY JUDGMENT*<br>*RE: Dischargeability* | | ☐ JURY DEMAND |

### BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR(S)<br>Jennifer Bergmann | BANKRUPTCY CASE NO.<br>16-02250 | |
|---|---|---|
| DISTRICT IN WHICH CASE IS PENDING<br>South Carolina | DIVISIONAL OFFICE | NAME OF JUDGE<br>David R. Duncan |

### RELATED ADVERSARY PROCEEDING (IF ANY)

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |

| FILING FEE (Check one box only)  ☐ Fee Attached   ■ Fee Not Required   ☐ Fee is Deferred |
|---|
| DATE<br>August 12, 2016 | PRINT NAME OF ATTORNEY<br>ANN U. BELL | SIGNATURE OF ATTORNEY |

/s/ Ann U. Bell

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: ) | |
| ) | Bankruptcy Case No.: 15-02250 |
| JENNIFER BERGMANN, ) | Chapter 7 |
| ) | |
| Debtor, ) | |
| ) | |
| E. PERRY BURRUS, III, AND LAKE ) | Adversary Case No. |
| COMO, LLC, ) | |
| ) | **COMPLAINT** |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| JENNIFER BERGMANN, ) | |
| ) | |
| Defendant. ) | |

Plaintiffs, E. Perry Burrus, III, (hereinafter "Burrus") and Lake Como, LLC (hereinafter "Lake Como") would respectfully allege as follows:

1. Plaintiff, E. Perry Burrus, III is a resident of South Carolina.

2. Lake Como, LLC is a South Carolina Limited Liability Company. Burrus is one of the members of Lake Como.

3. Defendant Jennifer Bergman is a citizen of South Carolina. Defendant filed a Chapter 7 action on May 4, 2016, and listed Burrus and Lake Como as Creditors with unknown balances in her Schedules.

4. Defendant had her Section 341 meeting with the Trustee on June 15, 2016.

5. The deadline for filing a Complaint regarding the discharge of a debt is August 15, 2016.

1

6.  This Court has jurisdiction of this matter under 28 U.S.C. §1334.

7.  This is a core proceeding under 28 U.S.C. §157.

8.  Venue is appropriate under 28 U.S.C. §1409.

**FOR A FIRST CAUSE OF ACTION**
(Money Obtained by False Pretenses Pursuant to 11 U.S.C. § 523(a)(2)(A))

9.  Plaintiff Lake Como realleges and incorporates herein by reference the allegations set forth above.

10. Defendant was the manager of two manager-managed LLCs, namely Docks Shell, LLC (hereinafter "Docks") and Sand Hill Stations, LLC (hereinafter "Sand Hill") (or collectively "the LLCs"). Both LLCs were engaged in the business of owning and operating gas stations in Beaufort County, South Carolina.

11. Prior to the filing of Defendant's bankruptcy case, Defendant approached Plaintiffs about investing in the LLCs.

12. Defendant made numerous representations to Lake Como to induce Lake Como into investing in the two LLCs.

13. For example, Defendant represented that a) she was a competent, experienced, and capable businessperson who possessed the business acumen to profitably run and manage the two gas stations owned by the LLCs, b) that two gas stations were highly profitable investment opportunities, c) that gas stations she managed were operating profitably and performing with significant financial success, d) that other investors in one of the gas stations only wanted out of the LLC because of unrelated personal financial considerations and that this unique circumstance presented an opportunity for Lake Como, and e) that the money Lake Como invested would be used for legitimate business purposes related to the LLCs, and f) that Defendant and her husband had personally invested over $370,000 in one of the LLCs.

14. All of Defendant's representations were false and fraudulent.

15. In reliance on the false and fraudulent representations, Defendant induced Lake Como to invest into the two LLCs.

16. Lake Como invested at least $110,000 in Docks.

17. Lake Como, invested at least $150,000 in Sand Hill.

18. After Lake Como invested into the two LLCs, Defendant converted money that belonged to the LLCs to her personal use by, among other things, using money that Lake Como invested and that belonged to the LLCs for her own personal use, and transferring money that belonged to the LLCs and to Lake Como to her personal accounts and to other bank accounts that Defendant controlled.

19. Defendant routinely used LLC money to pay for personal items such as Nails 365 Spa, Diva Nail and Spa, Kate Spade, Helzberg Diamond, Riverwalk Animal Hospital, One Ocean, Old Field HOA dues, College of Charleston (tuition), Palmetto Moon, Pods, Ann Taylor Loft, Everything Williamsburg, and the University of South Carolina (among others).

20. Defendant transferred money that belonged to the LLCs directly to or on behalf of other entities that Defendant owned, controlled, or had bank account signature authority over, including but not limited to Pro Quis, LLC, JK Developers, LLC, JLR Realty Group, LLC, JLR Realty, LLC, and Kenneth Scott Builders, LLC.

21. For example, in July 2014 alone, Defendant transferred over $600,000 out of the LLCs bank account and into other accounts she controlled.

22. In July 2014, Defendant wrote checks drawn on one of the LLC's bank accounts to JTKT, a company she owns and controls, for $536,817.27. The checks signed by Defendant transferring money to JTKT are attached as Exhibit A.

3

23. In July 2014, Defendant wrote checks drawn on one of the LLC's bank accounts to "Jenny's", a company she owns and controls, for $36,751.12. The checks signed by Defendant transferring money to Jenny's are attached as Exhibit B.

24. In July 2014, Defendant wrote checks drawn on one of the LLC's bank accounts to "JLR Realty Group", a company she owns and controls, for $50,904.44. The checks signed by Defendant transferring money to JLR Realty Group are attached as Exhibit C.

25. In October of 2014, Defendant met with a representative of Lake Como and other investors in the LLCs wherein Defendant made material and false representations to Lake Como, including but not limited to the following:

    a. That Docks was "fine" and "in the black" and was able to pay and cover all of its bills in light of a management agreement Defendant had secured for the benefit of Docks;

    b. That there was "no fear" that Docks was in financial trouble;

    c. That Defendant had other investors who were willing to invest in the LLCs such that the LLCs could lawfully secure loans to pay back Lake Como and the other investors;

    d. That certain financial institutions were willing and able to refinance some of the LLCs' loans which would be used to pay back Lake Como and the other investors;

    e. That all of the LLCs' bills had been paid, and that no late payments had been made in the past 60 days; and

    f. Numerous other false and fraudulent representations to be proven at trial.

26. The representations made by Defendant were false, fraudulent and misleading, and Defendant made them to buy additional time from her investors so she could continue to convert

more money to her personal use.

27. Due to Defendant's actions and inactions, Lake Como never received any return on any of the investments it made in the LLCs, and moreover, Lake Como lost every dime it invested in both LLCs.

28. In addition, both LLCs had to either be sold or shut down.

29. On January 29, 2016, Lake Como filed a lawsuit against Defendant is South Carolina State Court relating to Defendant's actions and inactions and seeking damages. A copy of the Complaint is attached as Exhibit D.

30. The Bankruptcy Code excepts from discharge "money . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud. . . ." pursuant to 11 U.S.C. § 523(a)(2)(A).

31. Defendant obtained money from Lake Como through false pretenses, false representations and actual fraud.

32. Lake Como has been injured and damaged as a result of Defendant's actions, including but not limited to

    a. the loss of the entire investment in both LLCs, which exceed $260,000;

    b. the loss of any profit that could have been obtained in the LLCs but for Defendant's improper actions;

    c. punitive damages; and

    d. attorney's fees and litigation expenses.

## FOR A SECOND CAUSE OF ACTION
(Money Obtained by Use of a False Writing Pursuant to 11 U.S.C. § 523(a)(2)(B))

33. Plaintiff Burrus realleges and incorporate herein by reference the allegations set forth hereinabove.

34. After Lake Como invested in the LLCs, Defendant fraudulently obtained more

funds by forging Burrus' name, without his knowledge or permission, on personal guaranties associated with vendor agreements, including but not limited to, vendor agreements with Bishopville Petroleum, H.T. Hackney Co. and Pawnee Leasing.

35. For example, on or about September 10 and September 25, 2012, Defendant forged Burrus' name to a personal guarantee with Bishopville Petroleum, attached as Exhibit E, and on March 21, 2014, Defendant forged Burrus' name to a personal guarantee with H.T. Hackney Company, attached as Exhibit F.

36. In addition to forging Burrus' name without permission, Defendant also fraudulently submitted a photocopy of Burrus' driver's license to vendors along with the forged guaranties

37. For example, Defendant fraudulently submitted Burrus' driver's license to H.T. Hackney, attached as Exhibit G.

38. After forging Plaintiff Burrus's name and obtaining money on behalf of the LLC based upon the forgeries, Defendant converted the funds fraudulently obtained with Burrus' forged signature to her own personal use by further misappropriating the funds from the LLCs.

39. In late November and December of 2014, various creditors of both LLCs began contacting Burrus alleging that they had personal guarantees signed by Burrus and demanding that Burrus pay the past due debts of the LLCs.

40. In addition, Burrus was personally sued by Bishopville Petroleum. A copy of the Summons and Complaint is attached as Exhibit H.

41. Burrus wrote to Defendant several times in December 2014 and January 2015 demanding that Defendant stop signing Burrus' name and that Defendant provide a list of each instance in which she had signed Burrus' name without his knowledge or permission.

42. Defendant refused to provide a list of where she had signed Burrus's name.

43. On February 3, 2015, Burrus filed a lawsuit against Defendant that included a request for a temporary restraining order and an injunction (hereinafter "Forgery Lawsuit"). A copy of the February 3, 2015 Complaint is attached as Exhibit I.

44. As a part of this suit, on February 6, 2015, Defendant was ordered to provide a list of all entities to which she signed Burrus' name. A copy of the February 6, 2015, Order for Injunction is attached as Exhibit J.

45. In the February 6, 2015 Order for Injunction, Defendant represented "to counsel and the Court that the instances where she signed Dr. Burrus' name . . . were as follows: a. Bishopville Oil Agreement[,] b. Pawnee Leasing[, and] c. Ascentium Capital (possible - not sure)."

46. In her representations to both counsel and to the Court, Defendant did not disclose H.T. Hackney Co. or Direct Capital Corporation as entities to which she signed Burrus's name.

47. On November 13, 2015, Defendant was deposed and, while under oath, she was given a copy of the Order for Injunction and questioned about it.

48. During her testimony, Defendant committed perjury and testified that she had listed all of the places where she had signed Burrus' name in the February 6, 2015 Order.

49. On February 11, 2016, the Beaufort County Court of Common Pleas dismissed the Forgery Lawsuit on the ground that South Carolina law does not recognize a civil cause of action for forgery. A copy of the Order of Dismissal is attached as Exhibit K.

50. That order has been appealed to the South Carolina Court of Appeals on the ground that South Carolina law should recognize such a cause of action. A copy of the Notice of Appeal to the South Carolina Court of Appeals is attached as Exhibit L.

51. The appeal has been stayed pending the outcome of this proceeding.

52. In early 2016 (almost one year after the Consent Order for Injunction), Burrus was contacted for the first time by Direct Capital Corporation, which sought to hold him personally liable for over $14,000 in past due amounts based on a forged guarantee provided by Defendant. A copy of the forged guarantee is attached as Exhibit M.

53. Prior to that time, Burrus had never heard of Direct Capital Corporation, and Defendant had never disclosed that she had signed Burrus's name to a Direct Capital Corporation personal guarantee.

54. Because Defendant had failed to disclose Direct Capital Corporation when she made affirmative representations to the Court related to the February 6, 2015 Consent Order for Injunction, Burrus filed a motion for sanctions and contempt of court against Defendant. A copy of the motion for sanctions and contempt of court is attached as Exhibit N.

55. That motion was under advisement when Defendant filed bankruptcy, and resolution of the motion has been stayed pending the outcome of this proceeding. A copy of the Order to Stay is attached as Exhibit O.

56. The Bankruptcy Code excepts from discharge any "money . . . to the extent obtained by. . . use of a statement in writing that is materially false, respecting the debtor's or an insider's financial condition; on which the creditor to whom the debtor is liable for such money . . . services, or credit reasonably relied; and that the debtor caused to be made or published with intent to deceive pursuant to 11 U.S.C. § 523(a)(2)(B).

57. As described herein, Defendant submitted materially false writings to vendors of the companies she managed when she submitted personal guarantees with Burrus' forged signature and when she fraudulently submitted Burrus' driver's license as part of applications for credit, goods,

money, or services.

58. The vendors, including Bishopville Oil, H.T. Hackney, Pawnee Leasing, and Direct Capital, reasonably relied on the documents respecting the financial condition.

59. Defendant published these documents with the intent to deceive so that the vendors would provide goods, services, money, and/or credit.

60. As described herein, Burrus suffered injuries and damages as a result of Defendant's use of a false writing.

61. Burrus was injured and damaged as a result of Defendant's actions, including but not limited to:

    a. Attorney's fees incurred by Burrus in defending lawsuit brought by vendors who extended credit to the LLC based on the forged guaranties;

    b. the costs and expenses incurred by Burrus associated with the on-going lawsuits connected with the LLCs;

    c. the value of Burrus' lost time from his employment that was required to deal with the results of Defendant's actions and inactions including but not limited to having to talk to collections agents; and

    d. the damage to Burrus' reputation in the community due to the unpaid bills and his purported responsibility therefor.

### FOR A THIRD CAUSE OF ACTION
(Fraud and Defalcation While Acting in a Fiduciary Capacity, or Larceny
Pursuant to 11 U.S.C. § 523(a)(4))

62. Plaintiffs reallege and incorporate herein by reference the allegations set forth hereinabove.

63. The Bankruptcy Code excepts from discharge debt "for fraud or defalcation while

9

acting in a fiduciary capacity . . . or larceny" pursuant to 11 U.S.C. § 523(a)(4).

64. As manager of the LLCs, Defendant owed fiduciary duties to Plaintiffs and, as described herein, Defendant breached her fiduciary duties.

65. After Lake Como made its investments, Defendant, while serving as manager of LLCs, converted money that belonged to the LLCs for her own personal use.

66. For example, Defendant used the LLCs' funds pay for personal services and items at, among other places:

a. Nails 365 Spa;

b. Diva Nail and Spa;

c. Kate Spade;

d. Helzburg Diamond;

e. Kohls (in Jacksonville, Florida);

f. Riverwalk Animal Hospital;

g. Palmetto Moon;

h. Kiawah Resort;

i. The Silver Vault (in Virginia);

j. One Ocean (a resort and spa in Atlantic Beach, Florida);

k. Massage Envy;

l. Hampton Inn (Charleston, South Carolina); and

m. The Westin Peachtree (Atlanta, Georgia).

n. Oldfield (dues owed to this residential community located in Beaufort County);

o. College of Charleston;

p. Palmetto Moon;

q. Pods;

r. Ann Taylor Loft;

s. Everything Williamsburg (Virginia);

t. The University of South Carolina;

u. Infiniti (car loan payments); and

v. Thomas Heyward Academy (private school tuition payment).

This is not an inclusive list.

67. Defendant also transferred money that belonged to one of the LLCs to herself and to companies over which Defendant had control, ownership, and/or signature authority such as Pro Quis, LLC; JK Developers, LLC; JLR Realty Group; JLR Realty, LLC; and Kenneth Scott Builders, LLC.

68. Lake Como had no interest in Pro Quis, LLC; JK Developers, LLC; JLR Realty Group; JLR Realty, LLC; or Kenneth Scott Builders, LLC.

69. After Lake Como's investments were made, Defendant made material and false representations to Lake Como as set forth above and incorporated herein as if set forth verbatim.

70. After making these representations, Defendant converted additional funds to her personal use due to the material and false representations being accepted by Lake Como.

71. Lake Como was injured and damaged as a result of Defendant's actions, including but not limited to:

a. the loss of the entire investment in Docks;

b. the loss of any profit that could have been obtain in Docks but for Defendant's improper actions;

c. the loss of the entire investment in Sand Hill; and

  d.  the loss of any profit that could have been obtained in Sand Hill but for Defendant's improper action.

### FOR A FOURTH CAUSE OF ACTION
(Willful and Malicious Injury Pursuant to 11 U.S.C. § 523(a)(6))

72. Plaintiffs reallege and incorporate herein by reference the allegations set forth hereinabove.

73. The Bankruptcy Code excepts from discharge debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" pursuant to 11 U.S.C. § 523(a)(6).

74. Defendant willfully and maliciously damaged both Plaintiffs through her actions, including but not limited to causing them to invest in Docks and Sand Hills with her fraudulent misrepresentations, converting the funds of both Docks and Sand Hills to her personal use or the use of entities she controlled or owned, forging Burrus' name on various documents as a guarantor, fraudulently submitted Burrus' driver's licenses to vendors, and harming Plaintiffs' reputation in the community.

75. Defendant knew that her actions violated the fiduciary duties owed to Plaintiffs and that without the forged signatures, the failure of the LLCs would have been discovered by her investors at an earlier time.

76. In order to prevent discovery of the actual financial situation of both Docks and Sand Hill, Defendant maliciously forged Burrus' signature to various documents as a guarantor and made false representations to Plaintiffs, both of whom were owed a fiduciary duty by Defendant.

77. As described herein, Plaintiffs suffered injuries and damages as a result of Defendant's willful and malicious acts, including but not limited to:

  a.  the loss of the entire investment in Docks;

b. the loss of any profit that could have been obtain in Docks but for Defendant's improper actions;

c. the loss of the entire investment in Sand Hill;

d. the loss of any profit that could have been obtained in Sand Hill but for Defendant's improper action;

e. Lake Como's attorney fees;

f. the costs and expenses incurred by Lake Como associated with the on-going lawsuits connected to Docks, Sand Hill, and Defendant;

g. Burrus' attorney fees;

h. the costs and expenses incurred by Burrus associated with the on-going lawsuits connectged to Docks, Sand Hill, and Defendant; and

i. the value of Burrus' lost time from his employment that was required to deal with the results of Defendant's actions and inactions.

WHEREFORE, Plaintiffs would ask this Court to fashion a remedy which this Court believes to be fair and equitable, including but not limited:

a. to declaring the debts owed by Defendant to Plaintiffs, as described herein, are non-dischargeable;

b. to awarding actual and punitive damages;

c. to awarding reasonable attorney's fees, if appropriate, for bringing this action; and

d. to entering a judgment against Defendant for the amounts owed Plaintiffs.

Respectfully submitted,

**DROSE LAW FIRM**

By: *Ann U Bell*
ANN U. BELL
District Court ID: 10372
MICHAEL DROSE
District Court ID: 609
3955 Faber Place Drive, Suite 103
Charleston, SC 29405
(843) 767-8888
Fax: (843) 767-3290
drose@droselaw.com


**TWENGE + TWOMBLEY LAW FIRM**


By:  /s/ J. Ashley Twombley
J. ASHLEY TWOMBLEY
District Court ID: 9388
JENNIFER CAMPBELL
District Court ID: 7442
311 Carteret Street
Beaufort, SC 29902
Telephone: (843) 982-0100
Facsimile:   (843) 982-0103
www.twlawfirm.com
Attorneys for Plaintiffs

Charleston, South Carolina

Dated: August 12, 2016

14